## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Azam Ansari,                                                   Case No: 08-cv-5351 (JRT/JJG)

      Plaintiff,                                **REPORT AND RECOMMENDATION**

v.

NCS Pearson, Inc., and
American Board of Internal Medicine,

      Defendants.

---

      This is a medical doctor's lawsuit against the American Board of Internal Medicine (ABIM) and NCS Pearson, Inc. (NCS) for negligence and other state law claims in connection with their administration of a board recertification exam.  The Defendants removed the case to federal court based on diversity of citizenship.  The issue is whether such diversity exists, and thus whether the case belongs in federal court or should be remanded to state court.

      The remand issue is before the Court at its own request.  After the Defendants removed the action to federal court, Plaintiff Dr. Ansari (Ansari) filed a memorandum of law opposing the removal, but did not file a formal motion to remand.  Subsequently, he filed a motion to amend his complaint.  In the process of reviewing that motion, the Court determined that, on the face of the complaint, diversity jurisdiction was lacking, because Ansari and NCS are both citizens of Minnesota.  Thus, it concluded that a threshold issue of subject matter jurisdiction exists.  It ordered briefing on the diversity issue, and subsequently heard both Ansari's motion to amend

and the remand issue on December 16, 2008.[1] This Report and Recommendation addresses the remand issue.[2] Ansari's motion to amend is considered in a separate Order.

As fully set forth below, the Court recommends that the District Court retain jurisdiction over this action, because NCS was fraudulently joined, and its citizenship should not be considered for the purposes of diversity jurisdiction.[3] The Court further recommends that NCS be dismissed from this action.

I.  BACKGROUND

   A.  The Parties

Ansari is a critical care (also known as intensive care) medical doctor. He is a Minnesota resident who practices medicine in Hennepin County.

ABIM is a non-profit corporation that grants board certifications to physicians in internal medicine and various internal medicine subspecialties. One of those subspecialties is critical care medicine (CCM). ABIM is a citizen of Iowa (its state of incorporation) and Pennsylvania (its principal place of business). *Amended Notice of Removal* at ¶ 6.

NCS is a citizen of Minnesota, as it is incorporated and has its principal place of business here. *Id.* at ¶ 7.

---

[1] As the Court ordered, Dr. Ansari filed a legal memorandum arguing for remand. Doc. No. 26. He did not, however, file a formal motion. The Court, however, can consider the issue of its subject matter jurisdiction without a motion. 28 U.S.C. § 1447(c).

[2] The law is unsettled regarding whether a remand motion is dispositive or non-dispositive. Accordingly, the Court issues its ruling as a recommendation to the District Judge. *See e.g., Curtis v. Altria Group, Inc.*, Civ. No. 05-2231 (PJS/RLE), 2007 WL 3051428 (D. Minn. Oct. 17, 2007).

[3] As discussed further below, the doctrine of fraudulent joinder does not require fraudulent intent. *E.g., Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993) ("fraudulent joinder exists if, whatever the plaintiffs' motive, their claim against an in-state defendant has no chance of success."). The Court finds no evidence of deceit by Dr. Ansari. The legal meaning of the phrase "fraudulent joinder," differs from the common understanding of the word fraud, which does not apply here.

### B.     The 2006 Exam

To obtain an ABIM board certification, a physician must, in addition to satisfying other criteria, pass an exam. In 1987, Dr. Ansari passed ABIM's CCM certification exam. A certification is valid for ten years. Consequently, in 1997, Dr. Ansari took, and passed, a maintenance of certification (MOC) exam in CCM.

On May 1, 2006, Dr. Ansari again took the MOC exam in CCM. This time, and for the first time, Dr. Ansari took the test by computer at an NCS facility in Minnesota. Dr. Ansari alleges that this was the first time the MOC exam in CCM had been given via computer. He also alleges that this was the first time ABIM and NCS collaborated on the administration of a MOC exam.

ABIM contracted with NCS to administer the May 2006 MOC exam in CCM. *Second Decl. of Louis J. Grosso* (Doc. No. 18), ¶ 7. Examinees, including Dr. Ansari, took the 180 question multiple-choice test on a computer at NCS. Using an answer key ABIM provided, NCS then used its own software to calculate each examinee's raw score (the number correct, and the number wrong). NCS forwarded each examinee's answers and the raw score information to ABIM. *Id.*

After receiving this information from NCS, ABIM independently calculated the examinees' raw scores. It compared its raw score calculation with that of NCS, as a quality control measure. *Id.* at ¶ 8. ABIM then conducted "psychometric operations"[4] to determine whether to discard any test questions, and to calculate the passing score for the exam. *Id.* Once

---

[4] According to the ABIM, "Psychometrics is a field of study concerned with the theory and technique of educational and psychological measurements, including the measurement of knowledge, abilities, attitudes, and personality traits. Psychometrics is primarily concerned with the study of measurement instruments, including tests." *First Dec. of Louis J. Grosso* (Doc. No. 2), ¶ 4.

3

this process was completed, ABIM notified examinees of their score on the exam and whether they passed.

Dr. Ansari received a passing score of 118 out of 180. *Amended Complaint* at ¶ 19. The cut-off score for passing the test was 110. *Id.* at ¶ 21. Thus, he received his CCM recertification.

Dr. Ansari asserts that his score was too low. *Id.* at ¶ 19. It was significantly lower than the practice exams he had taken to prepare for the 2006 exam, and his own post-test computation of his likely score. *Id.* at ¶¶ 18-19. He contends that NCS and ABIM erred in scoring the exam. *Id.*

Dr. Ansari also maintains that the failure rate for the 2006 MOC CCM exam was markedly higher than preceding and subsequent exams. *Id.* at ¶ 20.

### C.     NCS' History

Ansari alleges that NCS has a history of mishaps in exam administration. He attached a 2001 New York Times article discussing these difficulties as Exhibit 2 to his Amended Complaint. The article, entitled "Right Answer, Wrong Score: Test Flaws Take Toll," discusses one such mishap that occurred in Minnesota and, as well as several other examples of NCS' test administration errors.

Ansari also refers the Court to *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981 (D. Minn. 2006). In that case, children and their parents sued NCS for erroneous scoring of the October 2005 SAT college entrance exam. There, NCS determined that it had given 4,411 examinees scores that were too low. The Plaintiffs sued for negligence, among other causes of action, and sought injunctive relief. While dismissing the majority of the Plaintiffs' claims and denying injunctive relief, the court held that the Plaintiffs' negligence claims against NCS survived a motion to dismiss. *Id.* at 1001.

## II.     ANALYSIS

The issue before the Court is whether diversity jurisdiction exists, and consequently whether the case belongs in federal court or must be remanded to state court.

The Defendants removed the case based solely on diversity of citizenship under 28 U.S.C. § 1332(a).[5]  Dr. Ansari resides in Minnesota.  ABIM is a citizen of Iowa and Pennsylvania, but NCS is a Minnesota citizen.  In their removal papers, the Defendants acknowledge the apparent lack of diversity on the face of the Amended Complaint.  They argue, however, that Dr. Ansari's legal claims against NCS are clearly not viable.  Therefore, they assert that NCS was fraudulently joined in the lawsuit, and should be subtracted from the equation for the purpose of determining the existence of diversity jurisdiction.

### A.     Legal Standard – Fraudulent Joinder

Courts have used varying standards to assess fraudulent joinder claims.  In *Filla v. Norfolk Southern Railway Co.*, 336 F.3d 806, 810 (8th Cir. 2003), the court acknowledged the lack of uniformity, and articulated a "common thread in the legal fabric guiding fraudulent-joinder review."  Harmonizing Eighth Circuit precedent in this area, it stated:

> It is well established that if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained….  However, if there is a "colorable" cause of action – that is, if the state law *might* impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder….  As we recently stated … joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants….  Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent.

---

[5] ABIM and NCS are represented by the same counsel.  ABIM filed the notice of removal.  It was signed by ABIM's and NCS' joint counsel, and states at ¶ 9, that, "All defendants agree that removal of this matter is proper."

*Id.* (citations and internal quotations omitted) (emphases in original).[6] *See also Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007) ("We review a fraudulent joinder challenge to determine 'whether there is arguably a reasonable basis for predicting that the state law might impose liability upon the facts involved.'") (quoting *Filla*, 336 F.3d at 811); *Kaleb E. Lindquist American Legion Post #24 v. Lake of the Woods Agency, Inc.*, No. Civ. 03-926 (JRT/RLE), 2003 WL 22076615, *2 (D. Minn. Sep. 3, 2003).

Thus, using an overarching reasonableness standard, if Ansari "might" state a claim against NCS under state law, the case must be remanded. On the other hand, if it "clear" that he does not, joinder of NCS is improper, and the case stays in federal court.

When considering whether this standard is met, courts resolve all doubts in favor of remand. *Wilkinson*, 478 F.3d at 963. Additionally, the removing party bears the burden of establishing jurisdiction by a preponderance of the evidence. *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005).

While called "fraudulent" joinder, the doctrine does not require fraudulent intent. *E.g., Rhodes v. Dierks Lumber & Coal Co.*, 108 F.2d 846, 847 (8th Cir. 1940) (examining whether joinder fraudulent where "no actual bad faith on the part of the plaintiff" in joining non-diverse defendant); *In re Guidant Corp. Implantable Defibrillators Prods. Liab.*, MDL No. 05-1798 (DWF/AJB), 2007 WL 5377783, *3 (D. Minn. June 4, 2007) ("Fraudulent joinder does not require fraudulent intent; rather, fraudulent joinder exists if the plaintiff's claim against an in-state defendant has no chance of success.") (citations omitted).

---

[6] The Court acknowledges the Eighth Circuit's subsequent decision in *Simpson v. Thomure*, 484 F.3d 1081, 1084 n.2 (8th Cir. 2007), in which it characterized *Filla*'s discussion of the merits of the fraudulent joinder issue as non-precedential dicta. The Court does not read the *Simpson* footnote to minimize *Filla's* general discussion of the fraudulent joinder standard of review.

When considering a fraudulent joinder question, courts in the Eighth Circuit assess the viability of the Plaintiffs' claims from the face of the state court complaint. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant."); *Wesenberg v. Zimmerman*, No. Civ. 02-527 (PAM/RLE), 2002 WL 1398539, *2 (D. Minn. June 24, 2002) ("Courts look to the face of the complaint to determine if a defendant has been fraudulently joined.") (citing *Anderson*). *Cf. e.g, Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) (court may pierce pleadings and consider "summary judgment-type evidence" to determine whether plaintiff truly has possibility of recovery against non-diverse defendant).

**B.   Amount in Controversy**

To trigger diversity jurisdiction, the parties to an action must not only be citizens of different states, the matter in controversy must also exceed "the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  A threshold issue exists, because in his Amended Complaint, Ansari asserts that his monetary damages are "in excess of $50,000," but does not specifically allege that they exceed $75,000.

The amount in controversy requirement is met "when a fact finder could legally conclude, from the pleadings and the proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 549 (8th Cir. 2003) (quoting *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002)).

Dr. Ansari's Amended Complaint reflects that he alleged damages in excess of $50,000 on eight of his nine counts.  These alleged damages total well over the $75,000 diversity

jurisdiction threshold. Thus, Section 1332(a)'s amount in controversy requirement is satisfied. *Id.*

      **C.**    **Viability of Dr. Ansari's Legal Claims Against NCS**

Dr. Ansari alleged two legal claims against NCS: negligence and writ of detinue. He has not stated a colorable cause of action on either claim.

      **1.**    <u>**Negligence**</u>

Dr. Ansari pled that NCS was negligent in erroneously scoring the MOC CCM exam, and in failing to take adequate measures to correct its errors. *Amended Complaint*, pp. 15-16. He alleged that NCS owed him a duty of care to carefully and correctly administer and score the test. *Id.* at ¶ 41. He alleged that NCS breached those duties by failing to properly administer the test, resulting in understated scores and a high overall exam failure rate. *Id.* at ¶ 42. He pled that as a proximate cause of NCS' failings, he "suffered legal injury and received an understated score." *Id.* He further pled that he was damaged by the understated score, because his score reflects his level of scholarship and accomplishment in his field, and gauges how well he serves his patients. *Id.* at ¶ 22.

NCS responds that Dr. Ansari has not stated a colorable negligence claim against it, because he cannot show the existence of a legal duty or an injury. *Laska v. Anoka County*, 696 N.W.2d 133, 137-138 (Minn. Ct. App. 2005) (negligence claim fails if plaintiff fails to prove any of the claim's four essential elements).[7]

NCS has a stronger argument on lack of injury than it does on duty. NCS argues that the scoring errors about which Dr. Ansari complains did not involve it. Rather, it emphasizes that it just administered the exam as ABIM instructed it, and then calculated raw scores based on an

---

[7] The parties agree that Minnesota law governs the analysis.

answer key ABIM provided. Thus, it asserts that it owed no duty to Dr. Ansari regarding the scoring errors of which he complains.

NCS unsuccessfully raised a similar argument in *Russo*. 462 F. Supp. 2d 981. There, NCS argued that its contract with the College Board circumscribed its obligations with respect to administration and scoring of the SAT, and that it had no independent duty to the plaintiffs in negligence. The court rejected that argument, stating, "[I]t strikes the Court as unfair to hold at this stage, as a matter of law, that Plaintiffs lack a tort remedy because the alleged tort arose in the context of the performance of a contract to which they were strangers. Given that the cause of the scoring errors is undetermined, the Court cannot conclude that Plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief." *Id.* at 1001.

Similarly, here it is too early to conclude that there is no set of facts upon which the Court could find that NCS had a duty to properly administer and score the exam. NCS does not actually deny the existence of a general duty of care to Dr. Ansari in the manner in which it administered the exam. Rather, it asserts that he can show no duty with respect to the specific scoring issues described in his Amended Complaint. NCS' attempt to minimize its scoring role to escape a duty to Dr. Ansari does not adhere to the standard of review on this motion. The Defendants' affidavits regarding the scoring process are beyond the face of the Amended Complaint, the scope of review here.[8] As in *Russo*, it would be premature to conclude at this stage that NCS' role was so limited that it owed no duty of care to Dr. Ansari.

The issue of whether NCS' alleged negligence resulted in a legally cognizable injury is more problematic. In his Amended Complaint, Dr. Ansari acknowledged that, although he believes his score was too low, he passed the exam. He, therefore, received his CCM

---

[8] Even if they were considered, they confirm that NCS did, in fact, compute raw scores, and that NCS' computations were used in the scoring process.

9

recertification. He contends that his "understated," yet passing, score adversely impacts his professional identity, because he uses the score as a "yardstick" to measure the quality of care he renders. *Amended Complaint* at ¶ 22. He alleged that he was personally "demoralized" by receiving a score he believed was far too low. He also suggests that the erroneously scored exam affects the available pool of qualified doctors, because more doctors failed the exam than should have. *Id.* at ¶ 21.

These allegations do not state a colorable injury claim based on NCS' negligence. Dr. Ansari does not have standing to assert a claim on behalf of those doctors that failed the exam; he passed. His asserted injury does not coincide with theirs. *E.g., Jewell v. U.S.*, 548 F.3d 1168, 1172 (8th Cir. 2008) (discussing "prudential standing requirement that a litigant may generally assert only his own rights.").

Likewise, the Amended Complaint does not show that Ansari's allegedly understated score resulted in a legally cognizable injury. Ansari does not allege that he lost patients, revenue, or other opportunities due to the score. He does not allege that his score was published to anyone, except himself, unlike the scores at issue in *Russo*.[9] While undoubtedly very real to him, Dr. Ansari's demoralization regarding his score is not colorable injury on a negligence claim. *See Manion v. Nagin*, 394 F.3d 1062, 1067 (8th Cir. 2005) (applying Minnesota law and finding no cognizable injury on negligence claim); *K.A.C. v. Benson*, 527 N.W.2d 553, 561 (Minn. 1995) ("the breach of legal duty without compensable damages recognized by law is not actionable").[10] Since Dr. Ansari did not lose his CCM certification or articulate any concrete

---

[9] While outside the face of the Amended Complaint, the Defendants submitted an affidavit confirming that test scores are not published to anyone, except the examinee.

[10] To the extent Dr. Ansari claims purely emotional distress damages as a result of the lower score, he has not pled the predicate physical injury or physical danger required to recover such damages under Minnesota law. *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556

injury he suffered due to his score, his negligence claim is clearly not viable, even under the forgiving fraudulent joinder standard.

### 2. **Writ of Detinue**

Dr. Ansari's other claim against NCS is for writ of detinue. Pursuant to this claim, he alleges that NCS must give him a copy of the MOC CCM exam he took, his answers, the test answer key, and the software it used to generate his raw score.

The common law writ of detinue, a type of replevin action, no longer exists in Minnesota. *A & A Credit Co. v. Berquist*, 41 N.W.2d 582, 584 (Minn. 1950). Thus, Dr. Ansari cannot state a colorable writ of detinue claim.[11]

---

N.W.2d 557, 560 (Minn. 1996) (explaining availability of emotional distress damages in tort cases under Minnesota law, and limiting such damages in negligence cases to situations where "a plaintiff suffers a physical injury as a result of another's negligence…"); *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 32 (Minn. 1982) ("We have consistently held that no cause of action exists for the negligent infliction of emotional distress absent either physical injury or physical danger to the plaintiff."). Dr. Ansari's motion to amend his Amended Complaint states that he lost sleep and is more irritable due to his emotional distress. Even if these problems could satisfy the physical injury and danger zone requirements under Minnesota law, Ansari expressly attributes these problems to ABIM's alleged harassment of him after he complained about the test, not to NCS' alleged negligence.

[11] The writ of detinue was, for a time, codified at Minn. Stat. §§ 565.01 to 565.11, providing an action for claim and delivery. *A & A Credit*, 41 N.W.2d at 584. These sections were repealed and re-codified at Minn. Stat. §§ 565.21 to 565.29. The purpose of the current statutory mechanism is to allow a claimant seeking the return of personal property to make a motion to obtain it prior to a final judgment in the claimant's case. Minn. Stat. §§ 565.21, 565.23, subd. 1. Even if the Court were to generously construe Ansari's writ of detinue claim as a claim under Minn. Stat §§ 565.21 to 561.29, Ansari alleged no facts even suggesting that the test, answer keys, computer software, and his test answers are personal property that must be returned to him. Rather, he only alleges that he has the "right" to review these materials, because the Defendants made scoring errors. If Ansari's claims against ABIM survive, he may be able to review this material as part of the discovery process. He has not, however, pled a colorable right to review the testing material via a common law writ of detinue or its statutory successor.

**D.     Dismissal of NCS**

As discussed above, Dr. Ansari's Amended Complaint does not state a cause of colorable cause of action against NCS.  NCS' joinder in the lawsuit is, therefore, fraudulent; federal jurisdiction over the case is appropriate; and remand is not.

Because Ansari states no colorable claim against NCS, the Court recommends dismissal of NCS from this action.  Fed. R. Civ. P. 21 ("On motion, or on its own, the court may at any time, on just terms, add or drop a party."); *Anderson*, 724 F.2d at 84 (affirming dismissal of fraudulently joined defendant under Fed. R. Civ. P. 21); *Minnesota Deli Provisions, Inc. v. Boar's Head Provisions Co., Inc.*, 2006 WL 2250968, *1, 3 (D. Minn. Aug. 4, 2006).

**III.    RECOMMENDATION**

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

A.     Remand of this action to state court be **DENIED**.

B.     Defendant NCS Pearson, Inc. be **DISMISSED** from this action.


Dated:  January 23, 2009             s/ *Jeanne J. Graham*
                                     JEANNE J. GRAHAM
                                     United States Magistrate Judge


**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 6, 2009**.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.