# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| AZAM ANSARI, | Civil No. 08-5351 (JRT/JJG) |
| Plaintiff, | |
| v. | **ORDER AFFIRMING AND ADOPTING THE ORDER AND REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| NCS PEARSON, INC. and AMERICAN BOARD OF INTERNAL MEDICINE, | |
| Defendants. | |

Azam Ansari, 825 South Eighth Street, #812, Minneapolis, MN 55404, plaintiff *pro se*.

Livia A. Babcock and John J. McDonald, Jr., **MEAGHER & GEER, PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendants.

Plaintiff Azam Ansari, a critical care doctor, brought this lawsuit in Minnesota state court against defendants American Board of Internal Medicine ("ABIM") and NCS Pearson, Inc. ("NCS") alleging claims for negligence and seeking a writ of detinue against NCS, and alleging additional claims against ABIM. Defendants removed the case to federal court on the basis of federal diversity jurisdiction, *see* 28 U.S.C. § 1332. After Ansari filed a memorandum opposing removal without a formal motion to remand, United States Magistrate Judge Jeanne J. Graham raised, *sua sponte*, the subject matter jurisdiction and remand issues discussed below. Ansari also previously filed a motion in federal court to amend his complaint a second time. The case is now before the Court on

Ansari's objections to the Magistrate Judge's January 23, 2009, Report and Recommendation, which recommended that this Court dismiss NCS from the case and deny remand, and on Ansari's objections to the Magistrate Judge's Order denying Ansari's motion to file a second amended complaint. After *de novo* review of the Magistrate Judge's Report and Recommendation, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), and "clear error" review of the Magistrate Judge's Order, *see* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2, the Court adopts and affirms the Report and Recommendation and Order for the reasons stated below.

## BACKGROUND

Ansari is a critical care medical doctor in Hennepin County, Minnesota, and is a resident of Minnesota. ABIM is a non-profit corporation that grants board certifications to physicians in internal medicine and various internal medicine subspecialties, including critical care medicine ("CCM"). For the purposes of determining subject matter jurisdiction, ABIM is a citizen of Iowa (its state of incorporation) and Pennsylvania (its principal place of business). NCS, which administers computerized testing for ABIM and other educational, licensing, and professional testing organizations, has a principal place of business and state of incorporation in Minnesota. Thus, NCS is a citizen of Minnesota.

To obtain ABIM board certification in certain medical subspecialties, such as CCM, a physician must satisfy certain criteria and pass a certification exam. In 1987, Ansari passed ABIM's CCM certification exam, which was valid for ten years. In 1997,

Ansari took and passed a maintenance of certification ("MOC") exam in CCM. On May 1, 2006, Ansari again took the MOC CCM exam, but for the first time by computer at an NCS facility in Minnesota. Ansari contends that this was the first time the MOC CCM exam was administered via computer and alleges that this was also the first time that ABIM and NCS collaborated on such testing.

Examinees, including Ansari, took the 6-hour, 180-question exam by computer at an NCS location. The examinees' answers were "captured" in NCS's server, from which NCS developed raw scores (the number of answers correct and the number of answers wrong) using its own software. NCS then transmitted the examinees' answers and raw scores to ABIM for further assessment. ABIM independently calculated the raw scores based on the answers provided to them, and compared NCS's raw score calculations to ABIM calculations as a quality control measure. ABIM performed additional "psychometric" assessments to determine whether any test questions should be excluded, and to calculate the applicable passing score for the exam. ABIM then notified examinees of their respective scores and whether the examinees passed.

Ansari was informed that he passed the May 2006 MOC CCR exam with a score of 118 out of 180. The cut-off score for passing the examination was 110. By passing the MOC exam, Ansari received his CCM recertification.

Ansari contends, however, that his score was too low. Specifically, Ansari asserts that the score was significantly lower than any of the practice exams he took to prepare for the May 2006 exam or his own post-examination calculations of his May 2006 exam score. Ansari asserts that this inaccurate score was caused by ABIM's and NCS's errors

in scoring the exam.  In support of that conclusion, Ansari notes that the failure rate for the May 2006 MOC CCM exam was unusually high by comparison to preceding and subsequent exams.

Ansari brought a complaint against defendants, which was later amended, asserting that ABIM and NCS were negligent with respect to their calculation of the test scores and their conduct in addressing those alleged errors.[1]  Ansari also sought a writ of detinue, which is a type of replevin action, to recover a copy of the May 2006 MOC CCM exam, his answers to the exam questions, the exam answer key, and the software that was used to generate his raw score.  Defendants removed the case pursuant to 28 U.S.C. § 1441, asserting that this Court had jurisdiction based on "diversity of citizenship" subject matter jurisdiction, *see id.* § 1332.  Defendants acknowledged at the time of removal that Ansari and NCS were both citizens of Minnesota, and therefore that the parties were not "completely diverse."  *See Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997).  Defendants argue, however, that the claims against NCS are not viable and contend that the doctrine of "fraudulent joinder" dictates the dismissal of NCS from the case, thereby curing the "complete diversity" deficiency.  Ansari filed a memorandum opposing defendants' removal of the action but did not file a motion to remand the case.

The Magistrate Judge directed the parties to submit briefs to the Court addressing subject matter jurisdiction.  On December 16, 2008, the Magistrate Judge held a hearing

---

[1] Ansari brought additional claims against ABIM, including fraud and breach of contract, but those claims are not relevant to the fraudulent-joinder analysis, and are therefore not discussed here.

on that issue and on Ansari's motion for leave to file a second amended complaint, although Ansari asserts that the latter motion was not properly heard by the Magistrate Judge. In a January 23, 2009, Report and Recommendation, the Magistrate Judge recommended that this Court find that the claims against NCS were not viable, that the doctrine of fraudulent joinder required the dismissal of NCS from the case, and that the Court deny remand to the state court. Further, in an Order dated March 30, 2009, the Magistrate Judge denied Ansari's motion for leave to file a second amended complaint. Ansari filed separate objections to the Report and Recommendation and Order, which the Court considers below.

## DISCUSSION

## I.   MOTION TO REMAND

Section 1441(a) of Chapter 28 of the United States Code enables defendants to remove cases to federal court in any civil action over which "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have original jurisdiction over cases in which the amount in controversy exceeds the sum of $75,000 and the citizenship of each plaintiff is diverse from the citizenship of each defendant. 28 U.S.C. § 1332; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In other words, for the Court to properly exercise its original jurisdiction in a diversity case, there must be "complete diversity." *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806)).

Ansari contends that removal is improper because the parties are not completely diverse. In particular, Ansari points out that both he and NCS are citizens of Minnesota. Defendants counter that removal is proper because NCS was fraudulently joined in the lawsuit, that NCS should be dismissed from the case, and that NCS should therefore not be considered in evaluating whether this Court has subject matter jurisdiction.

Despite variations in fraudulent-joinder review in some federal courts, in *Filla v. Norfolk Southern Railway Company*, the Eighth Circuit noted "a common thread in the legal fabric guiding" the application of this doctrine. 336 F.3d 806, 810 (8th Cir. 2003). In particular, the Eighth Circuit indicated that "a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim." *Id.* In expanding on that reasonableness review, the Eighth Circuit stated:

> [I]t is well established that if it is **clear** under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained. . . . However, if there is a "colorable" cause of action— that is, if the state law **might** impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder. . . . As we recently stated . . . joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants. Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent.

*Id.* (citations omitted; emphasis original); *see also Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007) ("We review a fraudulent joinder challenge to determine 'whether there is arguably a reasonable basis for predicting that the state law might impose liability upon the facts involved.'" (quoting *Filla*, 336 F.3d at 811.)).

In conducting fraudulent-joinder review, the Court resolves all doubts in favor of remand, *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007), and the removing party must establish by a preponderance of the evidence that the Court has jurisdiction. *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005). Although the doctrine is referred to as fraudulent joinder, fraudulent intent is not required. *See Fed. Beef Processors, Inc. v. CBS, Inc.*, 851 F. Supp. 1430, 1435 (D.S.D. 1994).

The Court looks to the "face of plaintiff's state court pleadings" to determine the viability of a plaintiff's claims and therefore whether a party was fraudulently joined. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983); *but cf.*, *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) ("[T]he plaintiff may not rely solely on the allegations in his complaint; the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff truly has a reasonable possibility of recovery in state court."). Here, the Court looks to Ansari's first amended complaint, which was amended as a matter of course in state court and which was removed by defendants.

A.    **Negligence Claims Against NCS**

Under Minnesota law, a plaintiff must establish four essential elements to prevail on a claim for negligence: (1) the existence of a duty of care; (2) breach of that duty; (3) that an injury was sustained; and (4) that breach of duty was the proximate cause of the injury." *State Farm Fire & Cas. Co. v. Aquila, Inc.*, 718 N.W.2d 879, 887 (Minn. 2006). Ansari alleges that NCS was negligent in erroneously scoring the MOC CCM

exams and in failing to address those errors by identifying and notifying the affected examinees. Specifically, Ansari contends that NCS owed a duty to him and other examinees to correctly administer and score the MOC CCM exam; that NCS breached that duty by failing to properly administer the exam; that the breach proximately caused Ansari's "legal injury and . . . understated score"; and that Ansari was damaged by the inaccurate calculation of that score. (Am. Compl., Docket No. 1, Attachment 1, ¶¶ 22, 36-43.) Ansari alleges that he suffered damages because his "understated" (albeit passing) score adversely impacts his professional identity because he uses the score as a "yardstick" to measure the quality of care he renders; that he was personally "demoralized" by receiving a score that he thought was too low; and that the erroneous scoring affected the available pool of qualified doctors because more doctors failed the MOC CCM exam than should have. (*Id.*, ¶¶ 21-22.)

Initially, the Magistrate Judge determined that Ansari properly pled that NCS had a legal duty to Ansari, finding that "it is too early to conclude that there is no set of facts upon which the Court could find that NCS had a duty to properly administer and score the exam." (Report and Recommendation, Docket No. 31, at 9.) The Magistrate Judge also concluded, however, that Ansari did not plead a colorable injury claim based on NCS's negligence. First, the Magistrate Judge concluded that Ansari does not have standing to assert a claim on behalf of doctors who failed the exam, because Ansari passed. Further, the Magistrate Judge concluded that Ansari's allegation of an understated score failed to plead a legally cognizable injury. In particular, the Magistrate Judge noted that "Ansari does not allege that he lost patients, revenue, or other

opportunities due to the score," and that Ansari actually **passed** the exam and did not lose his CCM certification. (*Id.* at 10.) The Magistrate Judge also found that Ansari's alleged "demoralization" was not a colorable injury on a negligence claim. As a consequence, the Magistrate Judge concluded that Ansari's negligence claim against NCS was not viable, "even under the forgiving fraudulent joinder standard." (*Id*. at 11.)

Ansari generally contends, however, that he has properly pled a negligence claim under the applicable standard of review. (Objections, Docket No. 37, at 5-6.) More specifically, Ansari contends that he is entitled to conduct discovery to establish that NCS owed a legal duty to Ansari and that NCS breached that legal duty, and that he has properly pled damages. (*Id.*, at 10-11.)

After reviewing Ansari's objections *de novo*, the Court agrees with the Magistrate Judge that Ansari has not pled a viable claim for negligence against NCS. As an initial matter, the Magistrate Judge applied the appropriate standard of review in considering the viability of the claims. Moreover, Ansari's objections regarding the lack of discovery to establish NCS's legal duty fall flat; the Magistrate Judge considered whether Ansari properly pled a legal duty and specifically concluded that Ansari had done so. (Report and Recommendation, Docket No. 31, at 9 ("[I]t would be premature to conclude at this stage that NCS' role was so limited that it owed no duty of care to Dr. Ansari.").)

Ansari further insists that he properly pled damages. Although the Magistrate Judge noted that "Ansari does not allege that he lost patients, revenues or other opportunities due to the [allegedly understated score]," (Report and Recommendation, Docket No. 31, at 10), Ansari cites case law for the proposition that "[w]hile it is difficult

to ascertain loss of revenues with precision at this early stage of litigation, it is incorrect to assume Plaintiff has none." (Objections, Docket No. 37, at 12.) Ansari then proposes a broad array of remedies that are available to him to redress his alleged harm: equitable, compensatory, civil, punitive, and regulatory.[2] (*Id.*)

The Magistrate Judge, however, did not conclude that an inability to quantify damages and the lack of available remedies renders Ansari's negligence claim unviable. Rather, the Magistrate Judge determined that Ansari did not plead a legally cognizable **injury**.

It appears undisputed that Ansari did not allege that his understated score resulted in lost patients, lost revenue, or other lost opportunities, in part because the scores were not made public. Ansari alleges, however, that "a higher score on MOC examinations [is] associated with better quality of care rendered to Medicare patients." (Am. Compl., Docket No. 1, ¶ 22.) Ansari also asserts that "[i]t is fundamentally unfair and demoralizing to any professional previously certified as diplomate [sic] and to any examinee to receive an understated score or be a part of the high failure rate just because of the negligence and scoring errors of [NCS] and [ABIM]." (*Id.*)

First, it appears that Ansari contends that a lower score on the MOC CCM exam affects the care that he provides to his patients, but the Court disagrees with that reasoning. Certainly, a physician's score on an exam does not, as a consequence, affect

---

[2] Ansari does not object to the Magistrate Judge's conclusion that, because he passed the MOC CCM exam, Ansari has no standing to sue on behalf of doctors who did not pass the exam. *See Jewell v. United States*, 548 F.3d 1168, 1172 (8th Cir. 2008) (discussing "the prudential standing requirement that a litigant may generally assert only his own rights.").

the level of care the physician provides to patients. Rather, the score merely provides an indication of the level of care that the physician is prepared to provide to patients. Second, to the extent that Ansari claims that he was "demoralized" by the understated score, Ansari has not properly pled purely emotional distress damages because he has not alleged that he suffered physical injury in connection with any emotional distress. *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 560 (Minn. 1996) (describing the Minnesota Supreme Court's reluctance "to expand the availability of damages for emotional distress" and holding that "a plaintiff who suffers a physical injury as a result of another's negligence may recover for the accompanying mental anguish").[3]

In short, Ansari does not allege that the inaccurate score caused him to suffer any compensable damages that were proximately caused by NCS's negligence. To the extent that Ansari asserts several remedies available to tort claimants, he has alleged no grounds on which those remedies apply in this case. Accordingly, Ansari failed to plead a viable negligence claim against NCS.

Ansari does not object to the Magistrate Judge's conclusion that his claim for writ of detinue is not viable. The Court agrees with the Magistrate Judge's conclusions, and therefore finds that Ansari has not pled any viable claim against NCS in his amended

---

[3] As the Magistrate Judge noted, Ansari alleges in his Proposed Amended Complaint ("PAC") that he has lost sleep and is more irritable as a result of the emotional distress. Even assuming that the Court could consider the PAC in the context of this analysis, Ansari's pleadings fall short of claiming a cognizable injury as a result of NCS's breach of a legal duty: Ansari only contends that the physical manifestations of his emotional distress were caused by ABIM's alleged harassment of him after complaining about the test score, as opposed to any action or inaction by NCS.

complaint, that NCS must be dismissed from this case, and that complete diversity exists to permit the Court to retain subject matter jurisdiction and deny remand to state court.

**B.      Failure to Consider the Proposed Amended Complaint**

Ansari objects to the Magistrate Judge's failure to consider two additional claims against NCS outlined in his Proposed (second) Amended Complaint ("PAC").   In the PAC, which is the subject of the motion to amend, below, Ansari adds claims against NCS for fraud and punitive damages.  The Magistrate Judge, however, only considered the complaint as removed by defendants.

In considering whether removal is proper, the Court must only consider the pleadings and record at the time of the petition for removal.  *Masepohl v. Am. Tobacco Co., Inc.*, 974 F. Supp. 1245, 1249 (D. Minn. 1997) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).  "Subsequent amendment of a complaint cannot defeat removal." *Masepohl*, 974 F. Supp. at 1249 (citing *Pullman*, 305 U.S. at 537.)  Here, the Magistrate Judge properly evaluated only the first amended complaint, which was the operative complaint at the time of defendant's petition for removal and which only pled claims for negligence and writ of detinue.[4]

---

[4] Regardless, the Court notes that the PAC would likely fail fraudulent-joinder review for the same reasons that the PAC is deemed futile in light of the standard of review governing a motion to amend.

### C.    Miscellaneous Objections

#### 1.    Procedural Objections

Ansari also argues that the Magistrate Judge failed to "conform" to the District of Minnesota Local Rules by permitting a "dispositive motion," such as a motion to remand, to be filed less than forty-five days prior to the hearing on the motion, by permitting defendants to file their response less than twenty days before the hearing, and by not allowing Ansari sufficient time to reply. *See* Minn. L.R. 7.1(b)(2), 72.1(b).  Ansari also contends that he was denied due process because at oral argument on the motions to remand and to amend the complaint, the Magistrate Judge did not "hear" argument on the motion to amend.

In ordering that the parties brief the subject matter jurisdiction question, the Magistrate Judge stated on November 7, 2008, that "[g]iven that the parties have already explained their basic positions on this issue in prior filings, the Court orders all parties to file their memoranda of law by December 5, 2008." (Order of Magistrate Judge, Docket No. 21, at 2.)  That is, defendants and Ansari had equal time to file their memoranda in support of or opposition to subject matter jurisdiction.  Moreover, Ansari previously filed a memorandum in opposition to defendants' removal in which he specifically addressed the issue of complete diversity, (Docket No. 3), to which defendants did not directly respond.  Thus, Ansari may have had a **greater** opportunity than defendants to litigate the issue.  Under those circumstances, the Court cannot find that Ansari was prejudiced by the Magistrate Judge's briefing order.

The Court also disagrees that Ansari was prejudiced by the Magistrate Judge's failure to hear oral argument on Ansari's motion to amend his complaint. It is undisputed that Ansari's non-dispositive motion to amend was fully briefed by both parties, *see* Minn. L.R. 7.1(a), and the Magistrate Judge was not required to hear oral argument on the motion.[5]

### 2.    Other Objections

Ansari also objects to the Magistrate Judge's statement in the analysis of NCS's legal duty, that "[t]he Defendants' affidavits regarding the scoring process are beyond the face of the Amended Complaint, the scope of review here." (Report and Recommendation, Docket No. 31, at 9.) Notably, the Magistrate Judge included in a footnote to that statement that "[e]ven if [the affidavits] were considered, they confirm that NCS did, in fact, compute raw scores, and that NCS' computations were used in the scoring process." (*Id.*, at 9 n.8.) It is somewhat unclear to this Court to what Ansari objects, although defendants interpret the objection as a challenge to the Court's characterization of declarations as affidavits. Regardless, the Magistrate Judge makes clear that she did **not** consider those documents in making this recommendation to this

---

[5] Although Ansari objects to the Magistrate Judge's factual statement that the Magistrate Judge "heard both Ansari's motion to amend and the remand issue on December 16, 2008," that statement is neither inaccurate nor prejudicial. (*See* Report and Recommendation, Docket No. 31, at 1.) The Magistrate Judge scheduled and heard oral argument for both motions on December 16, 2008. (*See* Tr. of Dec. 16, 2008, hearing, Docket No. 36, at 2, 30.) The Magistrate Judge also noted that she would review the motion to amend in further depth after making a determination on subject matter jurisdiction. (*Id.*) Indeed, the Magistrate Judge held separate oral argument on the motion to amend on March 19, 2009. (Docket No. 54.)

Court, and the statement, regardless of its technical accuracy, has no impact on these proceedings.[6]

Finally, Ansari objects to NCS's dismissal from the case on the basis that "once NCS[] is dismissed, discovery process against it will shutdown [sic]. NCS[] will not respond to discovery even if subpoenaed and crucial evidence [from a declaration] will be useless." (Objections, Docket No. 37, at 11.) Ansari, however, does not point to any authority for the proposition that this Court will be unable to subpoena representatives of NCS or order discovery of documents related to Ansari's case against ABIM. Accordingly, the Court overrules Ansari's objection.

## II.    MOTION TO AMEND

Having concluded that NCS must be dismissed from this case, the Court turns to Ansari's motion to amend his complaint to add claims against both ABIM and NCS for negligent and intentional misrepresentation under common law and Minnesota statute, intentional infliction of emotional distress, spoliation of evidence, claim and delivery, and breach of fiduciary duty. Ansari also seeks leave to plead punitive damages. After hearing oral argument on the motion on March 19, 2009, the Magistrate Judge issued an Order denying Ansari's motion, to which Ansari now objects. After reviewing the Order to determine if the Magistrate Judge's conclusions are clearly erroneous or contrary to law, 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2, the Court affirms the Order.

---

[6]    Notably, the Magistrate Judge made the statement in the context of **rejecting** defendants' arguments that NCS owed no legal duty to Ansari.

### A.    Standard of Review for Motion to Amend

If a responsive pleading has already been served, "a party may amend its pleading only with the opposing party's written consent or with the court's leave."[7] Fed. R. Civ. P. 15(a).   Generally, a court should freely grant leave to amend as justice requires. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006).  A court maintains discretion to deny the motion, however, if permitting amendment would be futile.  *See Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) ("[T]here is no absolute right to amend and a court may deny the motion based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility.").

To determine whether the proposed amendment would be futile, the Court examines whether the PAC could withstand a motion to dismiss for failure to state a claim as provided in Federal Rule of Civil Procedure 12(b)(6).  *Cornelia I Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781-82 (8th Cir. 2008).  Under that standard, the Court considers all facts alleged in the amended complaint as true, and construes the pleadings in a light most favorable to the plaintiff.  *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 627, 638 (8th Cir. 2001).  However, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[7] Rule 15(a) supplies the standard of review for Ansari's motion to amend, with the exception of his request for leave to plead punitive damages, which is discussed further, below.

544, 555 (2007).  In sum, a plaintiff must state "a claim to relief that is plausible on its face."  *Id.* at 570.

## B.    Common Law and Statutory Fraud Claims

### 1.    Rule 9(b)

Ansari seeks to amend his complaint to add several additional fraud claims against ABIM,[8] including common law claims for negligent and intentional misrepresentation and statutory claims under the Minnesota False Statement in Advertisement Act ("MFSAA"), Minn. Stat. § 325F.67, and the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.69.  Defendants argue that Ansari failed to plead his fraud claims as required under Federal Rule of Civil Procedure 9(b).

"In cases brought in federal court, Rule 9(b) applies to both common law and statutory fraud claims made under Minnesota law where the gravamen of the complaint is fraud."  *Russo v. NCS Pearson*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006).  Here, Ansari's common law and statutory fraud claims allege certain misrepresentations by ABIM, and those claims are accordingly subject to Rule 9(b)'s heightened pleading requirements.  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Circumstances include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and

---

[8] NCS is dismissed from this action in accordance with the above discussion regarding fraudulent joinder, and the Court therefore does not consider Ansari's proposed amended claims against NCS.

what was obtained or given up thereby." *Commercial Prop. Inv., Inc. v. Quality Inns, Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (internal quotation marks omitted). Courts have described this standard as requiring the plaintiff to plead the "who, what, where, when, and how" of the fraud. *See, e.g.*, *Great Plains Trust Co. v. Union Pacific R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (internal quotation marks omitted). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (citations omitted).

Ansari premises his common law fraud and MFSAA claims on an allegation that ABIM's pre-exam website stated that the MOC CCM exam would include "pretesting" questions that would not be scored. Ansari also alleges that ABIM's pre-exam representation induced him to register and pay for the MOC CCM exam, and that he expected those pretest questions to be "subtracted from the total of 180 questions for his true, achieved scores. This did not happen resulting in understated scores." (Ansari's Proposed Am. Compl., ¶ 63, 71.) Specifically, Ansari alleges that "ABIM either did not adjust the answer keys for the pretest questions or failed to properly instruct NCS[] on how to apply the answer key for those pretest questions before raw scores were generated by [the] NCS[] software program." (Am. Compl., ¶ 63.) Finally, Ansari alleges that ABIM admitted the inaccuracy of its website representation, updated the website by deleting the evidence of the 2005 pre-exam website, and implemented a website with accurate information. Ansari also alleges other misrepresentations, including allegations

that defendants fraudulently concealed systemic problems with the May 2006 exam and that defendants made fraudulent and disparaging statements to other medical professionals about Ansari.

The Magistrate Judge found that Ansari's allegations regarding the pretest questions were at least sufficient to permit defendants an informed defense, but also concluded that Ansari's allegations of systemic problems with the May 2006 exam and of ABIM's disparaging remarks to other professionals were inadequate under Rule 9(b)'s pleading standards. The Magistrate Judge added, however, that even if Ansari adequately pled with particularity the who, what, where, when and how of the misrepresentations about the pretest questions, the fraud claims were futile because the PAC failed to adequately plead that Ansari relied on those misrepresentations to his detriment or that there was some causal relationship between ABIM's wrongful acts and the relief sought. Ansari now argues that the Magistrate Judge improperly applied the Rule 9(b) standard of review, that he properly pleaded reliance and causation, and that the Court should "probe" defendants for additional evidence relating to the fraud claims.

As an initial matter, Ansari simply fails to plead with particularity his claims relating to systemic problems with the May 2006 exam or allegedly disparaging comments that ABIM made about Ansari. Indeed, in his objections to these findings, Ansari only directs the Court to the same allegations that the Magistrate Judge previously reviewed and concluded were inadequate. Having considered those allegations, the Court cannot find that the Magistrate Judge's conclusions are clearly erroneous. Ansari contends that there were "scoring errors" and that ABIM "engaged in active material

concealment" of the scoring errors and made "multiple sequential material misrepresentations in bad faith," (*see* Proposed Am. Compl., ¶ 137), but does so without describing what the misrepresentations were (outside of noting failure rates for the exam), or when and how the misrepresentations were made.

## 2. Reliance and Causation

Even assuming that Ansari satisfied the Rule 9(b) particularity requirements for pleading the pretesting-questions misrepresentations,[9] a point which this Court finds difficult to conclude in light of the unclear allegations in the PAC, Ansari has not properly pled reliance or causation. The analysis of reliance differs slightly between common law and statutory fraud claims. Regardless, the Magistrate Judge found that Ansari failed to plead reliance for his common law fraud claims and that Ansari failed to properly plead causation for the purposes of his statutory fraud claims under the MFSAA or the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325.F.68-.70. Ansari does not object to the Magistrate Judge's finding as to his common law claims, and the Court thus turns to the analysis of Ansari's statutory claims.

With regard to the statutory fraud claims, Ansari contends that "[t]he defendant must intend that its conduct be relied on, but reliance by the victim is not necessary for the violation to occur." (Objections, Docket No. 58, ¶ 25.) The Minnesota Supreme

---

[9] Ansari objects to two factual statements in the Magistrate Judge's Rule 9(b) analysis of the pretesting-questions allegation. Because the Magistrate Judge concluded that Ansari's complaint satisfied Rule 9(b), however, Ansari's objections to those fact statements are moot.

Court has similarly held that, unlike with common law fraud claims,[10] for MFSAA or MCFA claims, "[a]llegations that the plaintiff relied on the defendant's conduct are not required to plead a violation." *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001). However, it is clear that both statutes require a plaintiff to plead a causal relationship between the misrepresentations and the actions of those affected by the misrepresentations. Minn. Stat. § 325F.67; *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 552 (8th Cir. 2008) (addressing the MCFA).

Here, the Magistrate Judge did not clearly err in finding that Ansari failed to plead such a causal relationship between the alleged pretesting question misrepresentations and the relevant action by examinees, taking the exam. Indeed, Ansari's PAC establishes that a multitude of factors, apart from the representation that there would be "pretesting questions," caused examinees to take the exam: Ansari alleges that ABIM requires physicians to obtain recertification in CCM every ten years and that NCS, in partnership with ABIM, administers the ABIM MOC CCM exam in Minnesota only in a computer-based format. (PAC, Docket No. 44, Ex. 1, ¶¶ 2-5.) Thus, if Ansari and other examinees wished to renew their CCM subspecialty certification, they would have to register for and take the MOC CCM exam through NCS's computer-based testing, regardless of whether there were unscored pretest questions.

---

[10] The requirements for pleading reliance for common law fraud claims are outlined in the Magistrate Judge's Order. (*See* Order, Docket No. 55, at 5-6.)

Given the Magistrate Judge's findings and the above analysis of Ansari's objections, it is clear that the additional fraud claims included in the PAC are futile, and the motion to amend the complaint to add those claims must be denied.[11]

### C.    Other Substantive Claims in the Proposed Amended Complaint

Ansari also seeks to amend his pleadings to include a claim for intentional infliction of emotional distress. To establish such a claim, a plaintiff must allege that the defendant intentionally or recklessly engaged in extreme and outrageous conduct that caused the plaintiff severe damages. *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). The Magistrate Judge concluded that Ansari failed to state a claim for intentional infliction of emotional distress because Ansari failed to plead that ABIM's conduct was extreme and outrageous. Ansari argues that the Magistrate Judge erred, however, by failing to consider the "totality of the circumstances," including defendants' unspecified "deceitful interference in long standing patient/physician relationships, harassment, intimidation, [and] retaliation . . . to the point of attributing their own dishonest fabrications to Plaintiff." (Objections, Docket No. 58, at 12.) In support of this claim, Ansari points the Court to a footnote in the PAC describing a letter to the ABIM attorney indicating that he has not disparaged ABIM members or claimed that the MOC test questions were "somewhat faulty." (*Id.*, at 17-18 n.8 (internal quotation marks omitted).)

---

[11] Although Ansari further argues that the Magistrate Judge erred by "fail[ing] to probe defendants to account for additional evidence of misrepresentations," the Court need only look to the face of the PAC to determine futility. *See Cornelia I Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781-82 (8th Cir. 2008).

Although it is unclear, exactly, what conduct Ansari alleges is extreme and outrageous in that passage, the Court considers Ansari's claims of harassment as alleged in Count 11 of the PAC and as referenced in his objections. For an act to be extreme and outrageous, it must pass the boundaries of civilized decency and be so severe that a reasonable person cannot be expected to endure it. *Hill v. Scott*, 349 F.3d 1068, 1075 (8th Cir. 2003). As a court in this district has previously noted, "falling short of established standards of professionalism and courtesy is a far cry from engaging in conduct that is so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Glass v. IDS Financial Servs., Inc.*, 778 F. Supp. 1029, 1074 (D. Minn. 1991). Here, the Court concedes that ABIM's alleged actions, if proven true, may be improper in the business world. However, the Court is unable to conclude that the Magistrate Judge clearly erred in denying Ansari's request to amend his complaint to add this claim. In short, even after liberally construing Ansari's claim, it is untenable to contend that ABIM's alleged actions were so atrocious as to exceed the bounds of decency such that a civilized community would not tolerate such conduct.

Next, Ansari seeks to bring a claim for spoliation of evidence. As the Magistrate Judge noted, however, Minnesota does not provide for a substantive civil claim for negligent or intentional spoliation of evidence. *See Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 439 (Minn. 1990). As a result, Ansari has failed to state any claim on which relief may be granted, although that conclusion does not preclude Ansari from seeking sanctions for spoliation of evidence under appropriate circumstances.

Further, Ansari seeks to add a claim for "claim and delivery" under Minnesota law. Minn. Stat. § 565.21. The statute and its corollaries codify the equitable writ of replevin in which a plaintiff can seek a court order for the return of personal property. *Id.* § 565.23-.24. Specifically, Ansari seeks a Court order requiring ABIM to return the answers to his MOC CCM exam, which Ansari claims are his property. Ansari, however, does not provide any support for the assertion that the exam answers are his property (beyond an unsupported assertion that the answers constitute his "intellectual property"), and the Court agrees with the Magistrate Judge that Ansari has failed to state a claim for claim and delivery.

Ansari also seeks to amend his complaint to include a claim for breach of fiduciary duty against NCS. Given NCS's dismissal from the case, however, Ansari's objections to the Magistrate Judge's finding that such a claim is futile are moot.

### D.     Punitive Damages

A party may seek leave to plead punitive damages "upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights and safety of others." Minn. Stat. § 549.20, subd. 1(a). In moving to amend a pleading for punitive damages, a party

> must allege the applicable legal basis . . . or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.

Minn. Stat. § 549.191.

In assessing whether there is cause to plead punitive damages, the Court will consider two rules. First, there must be clear and convincing evidence that the defendant deliberately disregarded the rights or safety of others. *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1018 (D. Minn. 2003). Second, when considering whether there is prima facie evidence, a court only considers evidence "which, if unrebutted, would support a judgment in [the moving] party's favor." *Olson v. Snap Prods., Inc.*, 29 F. Supp. 2d 1027, 1034 (D. Minn. 1998) (internal quotation marks omitted). Notably, however, a Court must still scrutinize the record before it, and § 549.191's requirement that a party present "one or more affidavits" requires the plaintiff to provide more than a merely self-serving affidavit in support of his motion. *See Berczyk*, 291 F. Supp. 2d at 1009-10 ("Quite plainly, a prima facie case, established by clear and convincing evidence, requires evidence that is both competent, and probative, that is, the evidence must be admissible.").

The Magistrate Judge concluded that Ansari failed to present a prima facie case for punitive damages because Ansari failed to produce evidence of "deliberate disregard." To establish "deliberate disregard," Ansari must produce evidence that the actions of the defendant were intentional, not simply careless or negligent. *Hern v. Bankers Rights Cas. Co.*, 133 F. Supp. 2d 1130, 1135 (D. Minn. 2001). In an effort to establish that intent, Ansari offers his own affidavit describing the adhesion contract that he was required to sign prior to the May 2006 exam; stating that defendants made several mistakes when scoring the exam as a result of "computer glitches" and psychometric adjustments to the test results; and broadly claiming that ABIM engaged in "sequential

material misrepresentations and willful and wanton acts." (Ansari Aff., Docket No. 46.) Ansari, however, fails to identify those misrepresentations or acts with any clarity or detail. Moreover, the form of the affidavit suggests that Ansari is merely repeating allegations or accusations outlined in the PAC.

As noted by the Magistrate Judge, even assuming the facts alleged by Ansari as true, there is no clear and convincing evidence that ABIM deliberately disregarded the rights or safety of others. Regardless of Ansari's objection to the Magistrate Judge's conclusion that there was only "nominal proof" that the scoring errors occurred, it is at least clear that there is not clear and convincing evidence that ABIM deliberately disregarded the rights and safety of Ansari or other examinees.[12]

As a consequence of the foregoing analysis, the Court finds that the Magistrate Judge did not clearly err in denying Ansari's motion to amend his complaint. Ansari's sought-after amendments are futile, and Ansari's motion to amend was therefore properly denied.

## ORDER

Based on the foregoing records, files, and proceedings herein, the Court **OVERRULES** Plaintiff Azam Ansari's objections [Docket No. 37, 58] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated January 23, 2009 [Docket

---

[12] The Court adds that it is too early in this litigation to seek leave to plead punitive damages where discovery has not commenced and where Ansari has been unable to develop a record that ABIM deliberately disregarded his rights and safety. *See Berczyk*, 291 F. Supp. 2d at 1009 n.5 ("As to Section 549.191, it would make no sense to require a party to seek leave to amend so as to plead punitive damages, if all that were required of the party would be the conclusory allegations which the Section was enacted to rectify.").

No. 31] and **AFFIRMS** the Order of the Magistrate Judge dated March 30, 2009 [Docket

No. 55].

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendant NCS Pearson, Inc. is **DISMISSED** from the case; and

2.    Plaintiff Ansari's Motion to Amend the Amended Complaint [Docket

No. 44] is **DENIED**.


DATED:  July 23, 2009                                    s/ John R. Tunheim
Minneapolis, Minnesota.                            _____
                                                              JOHN R. TUNHEIM
                                                        United States District Judge